Good morning, Your Honors. Mark Flanagan appearing on behalf of the appellant, Trung Tran. I'd like to reserve one minute for rebuttal. You may do so, but just watch the clock, Counsel. Thank you. This is an appeal from the District Court's denial of Appellant's habeas petition challenging his state court conviction and sentencing, and more specifically the application of Section 186.22b1 of the California Penal Code for the commission of a robbery with the specific intent to promote, further, or assist in any criminal conduct by a gang member. This appeal presents the question of whether the evidence was sufficient under a Jackson v. Virginia inquiry to support the gang enhancement under this Court's decisions in Briseño v. Scribner and Garcia v. Carey. We submit that under Briseño and Garcia, the evidence of trial was insufficient as a matter of law to support a finding that appellant acted with the specific intent to promote, further, or assist in criminal activity of gang members. Indeed, the evidence in this case falls short of the evidence that was adduced in those two cases. Let me ask you. This is the heart of some matters that are bothering me. Is it your view that Briseño, and I guess is it Garcia? I believe it is. That they just require a reverse – that they're controlling here and they require a reversal? Is that your – It is, Your Honor. And here's how I would lay it out. Briseño and Garcia set forth the controlling rule of law as to 186.22b1. At least from our perspective in the Ninth Circuit, because the State courts take a different view of Garcia. You're quite correct that there are intermediate – There are two published intermediate court of appeals and there are two unpublished intermediate court of appeals that both criticize Garcia. Yeah. Hill and Romero say it's flat wrong. The Court is absolutely right. So maybe we should certify to the Supreme Court of California? Would that be a good idea? I don't know whether that would be appropriate in this type of case. I think that – Why wouldn't it? Why wouldn't it be? I mean, we're dealing with State law and we've got a situation where we have a case and the California courts now have said our case is wrong. I mean, aren't we supposed to follow State law? We are, Your Honor. Wouldn't that be an indication we ought to let them tell us what it is rather than try to figure it out ourselves if we got it wrong, or at least potentially? Your Honor, if the California Supreme Court would rule on this decision, it certainly would be the tiebreaker, if you would, because Briseño and Garcia were based on their view of how the California Supreme Court was doing. Well, Briseño went a little step further. Briseño went on to say that their understanding of what the California Supreme Court might do would be more consistent with Garcia than with the two California intermediate court of appeal decisions. That's correct. There's another wrinkle in here, and that's the Morales case. As you know, the government argues, California argues, that Morales sees these two parts of the enhancement that you're talking about in the disjunctive. So you don't have to satisfy the second prong. All you have to do is satisfy the first prong, that it was a bunch of gang guys that did this. And I'm not quite sure how to read Morales. I've read it a couple of times. How do you read Morales? I read Morales, and I think the Hill case as well. I think you could look at what Judge Wardlaw said in her dissent in, I believe, in the Briseño case, and the suggestion is that the statute should be interpreted to mean that all you have to do is intend to commit a crime with someone whom you know to be a gang member. And that's what the State says Morales holds. Right. And I would submit that that is actually a wrong interpretation of the statute. But if that's right, Briseño is wrong. If that is right, Briseño is wrong. So again, I mean, here we are mucking around trying to figure out what State law is. And my thinking is that maybe it's better to let the Supreme Court have the first opportunity to tell us where it is, rather than continue to get into this fight. It seems to me a real mess, because you've got the State convicting people on Theory 1, and we're just sitting here on habeas waiting to undo everything. And that doesn't sound like good government. It's a fair point, Your Honor, and certainly certifying it to the California Supreme Court would, and if they were to take review, would resolve the question that we're arguing about right now, or we're discussing right now. Meanwhile, your client sits and stirs for another two years while we get an answer. That's one of the problems with going through that process. But on the other hand, he was, well, that would be our concern, Your Honor. Well, if we were to reverse based on Briseño, what would your showing be that there was no gang enhancement here? So the issue is whether there was proof, whether any rational trier of fact could have found that my client, who was an admitted non-gang member, stipulated that he was not a member of the gang, whether he specifically intended to assist, to promote further or assist gang criminal activity. He was not officially a gang member, but he seemed to be kind of like a hanger-on gang wannabe guy who was sort of trying out for the gang. I mean, that's what the suggestion was. Well, I don't think that the evidence fairly supports that conclusion. That was Officer Ta's hypothesis. The problem with relying upon Officer Ta is that there's no factual predicate for much of what he was opining on. The factual predicate is that the facts that were known, and by the way, the State called John Tran, one of the accomplices who was a gang member, to testify, so it was well within the power of the State to bring out all the issues relating to my client's involvement with the gang or not and what the intent of this crime was or not. Officer Ta hypothesized that my client might have been a hanger-on or a wannabe. The only evidence of my client's involvement with this gang, apart from this particular incident, was a prior incident where a gang member had been knifed and he drove that person to the hospital. The guy was knifed in the cafe where my client's sister worked. So that's the only evidence that sort of ties Officer Ta's testimony to the facts at all. But that kind of expert opinion is immiscible under California law, so there is some evidence that ties him in as a gang wannabe. There's evidence that he knew the gang members. And he was helping them on their various activities. Well, he drove an injured person to the hospital and he committed this crime. But this crime, and I think one of the teachings of Briseno and Scribner is that the specific intent has to be a specific intent to help the gang in some manner other than this crime itself. Well, doesn't the purpose of this gang, though, seem to be to commit robberies? I mean, isn't that what the evidence shows? This gang exists to commit robberies. Your Honor, I don't believe that there is any factual testimony as opposed to Officer Ta's expert testimony. Again, though, California allows that. They allow him to opine as to what he thinks the gang does. But it's only as good as the underlying evidence. There was no evidence that I'm aware of, certainly John Tran didn't testify, that this gang existed to commit robberies. They were a small, loose-knit group with no leadership, no gang territory, didn't make use of gang monikers or tattoos in general. So why did they exist, if not in order to commit robberies? Why does any group of people exist to hang out together? In fact, that's what John Tran testified to, is that they were mostly a group of young Vietnamese gentlemen in San Jose who hung out together. That's what the evidence actually showed as opposed to what Officer Ta hypothesized. He hypothesized that, well, this type of crime would enhance their reputation. But there's no evidence suggesting that it, in fact, would enhance their reputation, apart from his speculation. And with respect to the specific intent, which is what we're really talking about, what was the evidence that any of the members, much less my client, specifically intended to enhance the reputation of the gang through this crime? The evidence is actually to the contrary. John Tran testified that the only thing that they discussed when they were planning the robbery was they would make money because they believed it was a house of gambling and prostitution, there'd be a lot of money there. This is when John Tran and the other gang members are meeting before they meet my client. That's all they talk about, there'll be money there. Then they meet up with my client for 10 to 15 minutes, and that's all they talk about. He admitted on cross-examination there was no discussion, either among the gang members or with my client, that this would somehow help the gang. Counsel, you're down to about a minute if you want to reserve. I'll reserve. Thank you. You may. We'll hear from the State. Good morning. Juliet Haley, appearing for Appellee Horrell. I think that this panel is quite right, that this is a tough case for the State, because under State law, we met the burden of proof, and it has only been in. But then there's Briseno. There's not even a uniform panel decision, but, yes, there is a split decision among the two panels telling California, notwithstanding a uniformity of State appellate decisions, what State law is. Well, you'd have to concede, would you not, that if Briseno controls, then we have to reverse. I think that if Briseno controls, I think that it would be challenging to affirm. We're bound by prior panels. Right? That's where we start. Right? Right. I'm not even sure we can certify if we're bound by a prior panel unless we go in bank and have the in-bank court certify it. Well, I think that there's, I mean, there's a couple of things that I would urge. One, just to bring this panel up to date, I started searching in preparation for argument to see anywhere if I could find whether the California Supreme Court is considering this. And I was able to find that there was, they took a sufficiency of the evidence case on 186.22, and our office has urged them. We've urged them in our briefing. You've gone like this with Garcia and Briseno. Literally. I mean, it's here's the appellate court decisions, here's Briseno and Garcia, please say something. But, you know, under state law, it's challenging to get a petition for review because if there's a uniformity of decision, they're not inclined. And I appreciate also that their continual refusal to grant review, you know, this court can't take anything from that substantively. But, I mean, there continues. You shepherdize Briseno in every state court. There's even another appellate published decision where they, you know, the defendants make the same argument. The court explicitly says this court is wrong on state law and petition for review is denied. I mean, it just keeps going. But I do think that, you know, there can be a request for certification. It's going to be challenging because even under the certification rules, there can't be, like, controlling appellate decisions. And there are. So, I mean, I don't know if the – I mean, to be honest, I don't know if the California Supreme Court would accept certification. I would urge it. And, you know, as far as Briseno, I mean, I have to respectfully say that it is wrong and that even the standard that Briseno applied, convincing evidence, convincing evidence, I don't think was met. But even if it's wrong, don't we as a panel of three judges have to follow it? Well, I mean, I think that under your – under your circuit rules, yes, I think that there might be a possibility of distinguishing it given the fact that there continues to be more evidence and more evidence and more evidence by the State courts that Briseno's guess at how the California Supreme Court doesn't meet that convincing evidence standard. Well, are you suggesting maybe we should do a sua sponte recommendation to have an in-bank vote within our own court? I mean, the State would appreciate this. I mean, you appreciate that on sufficiency of evidence, we don't have any redress. This Court – this Court throws out the gang enhancement. We can't retry him. Why? It's insufficient evidence. Insufficient evidence. Jeopardy. Sure. Jeopardy. Sure. I mean, it's – and this is going to just keep going. I mean, I'm hoping Abiliar is the name of this case. Oh, wait a minute. You're just talking about the gang enhancement, though, right? Right. His sentence would be reduced down to about six years, right? Excuse me? His sentence would go down to about six years. Yes. So he's not going to be turned loose. No, but I mean – I mean, this was, you know, an act by the State legislature to deal with a very serious problem of gang crimes. What was his sentence with the enhancement? It's a – it's a – it turns into an indeterminate term. What was – is there a minimum? I think it's 15 to life. But, you know, we're just – I mean, the other thing I can – the only thing else that I can suggest, and this is, is that I don't think that this issue is within the COA. And we have a strange sort of exhaustion procedural default problem because, as you can appreciate, since it wasn't ever considered an element, it was never argued explicitly. It's close enough. I mean, we should figure it out. I'm trying to present the options. We have the authority to expand the COA if there's any problem. Right. But here it's so close that I – Right. But, yeah, I would urge this Court to request an en banc to certify the question. And as I said, there's – Abiliar is the case where we've urged our Supreme Court to please say something about Briseño and Garcia. Can you file a 28-J letter for us about this Abiliar case so we know what it is? Absolutely. I mean, it's – there's no assurance that they will – I know, but at least we can – if we're so inclined, we can reference that in any request that we make to our own court. How recent was that? Abiliar has been – is pending, but it's been pending for some time. At what level? California Supreme Court. Petition for a hearing is pending. No, they've actually granted review, and the question is the sufficiency of the evidence. It's a raping concert by gang members. But, you know, when you get into the precision of what aspect of the sufficiency you're challenging and how they're going to frame the issue, we've just urged in our briefing how to do that. Well, don't they now, under their procedures, don't they identify the issue that they granted a hearing on? Yeah. And the issue is whether there is sufficient evidence to support the gang enhancement, the 186.22. So we're in the ballpark at least. Nobody – I mean, to be honest, nobody in the court of appeal was fighting over what is the specific intent, the actual – is it the specific intent to commit this crime or another one, as Briseno has concluded. So it's not that it was square before them, but we have urged that they could easily deal with this problem, and we're urging them in our briefing to say, lay it out, make it really clear. I see. Now, Morales is final, right? There's no activity going on in Morales. Right. I know you're going to send us a 28-J letter, but what's the name of the case again?  It's – A-B-I-L-L-I-A-R. Very well. And I have the – No, that's fine. No, you'd send a 28-J, please. All right. And if there – Anything further? If not, counsel, for the appellant, you have about a minute's time. Thank you, Your Honor. Thank you, counsel. Unless the panel has any questions, we would submit it. Very well. The case just argued will be submitted for decision.
judges: O'scannlain, Trott, Paez